CONCORD, March 19, 1866.

---

## OPINION OF THE JUSTICES.

The powers of town-clerks in amending records and returns of votes. The duties of the board of canvassers in such cases.

The statute, authorizing town-clerks to amend their records or returns of votes for state and county officers " according to the facts of the case," only authorizes them to make their record to correspond with the declaration of the vote, as publicly made by the moderator at the time in open town-meeting, and to so amend their return as to make it a true copy of such record.

The board of canvassers of the votes for such officers can only require town-clerks to amend their records or returns in the manner above stated, and the board of canvassers cannot go back of such record and return.

*To His Excellency E. A. Straw, Governor of New Hampshire:*

MY DEAR SIR—Yours, containing certain inquiries in regard to the duties of the governor and council in canvassing the votes for members of congress, was received by me on the 6th instant. I wrote to Hon. S. N. Bell, of Manchester, and Hon. A. F. Pike, of Franklin, requesting each, as a friend of the court, to furnish to the members of the court a brief upon the points raised by your inquiries. Accordingly we have received from each of those gentlemen an able brief, which we have considered. The judges have been together, and, upon consultation, I am happy to inform

you, have agreed unanimously upon an opinion, which I have the honor herewith to submit. Very respectfully, your obedient serv't,

Concord, May 28, 1873. J. E. SARGENT, Chief Justice.

———

CONCORD, May 28, 1873.

*To His Excellency Ezekiel A. Straw, Governor of New Hampshire, and the Honorable Council:*

The undersigned, the justices of the supreme judicial court, having considered the three questions upon which the governor and council have requested our opinion, in relation to their duty in canvassing the returns of votes for representatives in congress, and having considered the arguments submitted to us, at our suggestion, by each of the candidates concerned, respectfully make the following reply:

The first question proposed is, "Is it the duty of the governor and council to go behind said returns to examine as to their accuracy, before making the declaration and giving the required certificate to the person who appears to be elected?" To this we answer, Yes, to the extent hereinafter explained.

The second question is, "If it is their duty to go behind the returns, are they required to do more than to ascertain that said returns are correct, according to the declaration made by the proper officers in open meeting, and the records thereof made at the time?" To this we answer, No.

The third question is, "If the correctness of the declaration and the record is to be ascertained, how far shall the investigation extend, and in what manner shall the evidence be taken and submitted?" To this we answer, that, on due cause being shown, the investigation would properly extend so far as to enable the governor and council to require the town-clerk to amend his record, and the copy thereof returned to the secretary of state, so that the same should truly state the facts which it was his duty to record; and that in such an investigation, depositions taken in the form customary in judicial proceedings, and oral testimony given in the presence of the governor and council, after due notice to the parties interested, would be free from many objections to which *ex parte* evidence is exposed.

The reasons for our opinion, on the subject of the town-clerk being required to amend his record and the copy thereof returned to the secretary of state, may possibly be useful to the governor and council in making a practical application of the law in the investigation that may be had.

The following sections of chapter 30 of the General Statutes relate to the "Election of Representatives in Congress:"

"Section 4. The meetings in the several towns in each district shall be warned and governed, and the returns of votes for representatives shall be made out, signed, certified, sealed, directed, transmitted, receipted for, examined, and counted, at the same time and in the same manner as provided for the returns of votes for senators."

"Section 5. Upon such examination and count, the person having the largest number of votes returned in any district shall be declared

duly elected, and the governor shall forthwith transmit to the person so elected a certificate of such election under the seal of the state, signed by himself, and countersigned by the secretary."

Article 32 of Part II of the Constitution, provides that town-meetings for the choice of senators shall be governed by a moderator, who shall, in the presence of the selectmen, in open meeting, receive the votes, and shall, in the presence of the selectmen and town-clerk in said meetings, sort and count the votes, and make a public declaration thereof, with the name of every person voted for, and the number of votes for each person, and the town-clerk shall make a fair record of the same, at large, in the town-book, and shall make out a fair attested copy thereof, to be sent to the secretary of state.

Article 33 provides that the governor and council shall, as soon as may be, examine the copies returned to the secretary of. state, and act upon the evidence furnished by such copies. The most material of these constitutional provisions are reënacted and confirmed by the following sections of the General Statutes.

Chapter 28, " Section 15. The moderator shall, in the meeting, in presence of the selectmen and town-clerk, sort and count the votes, and make a public declaration of the whole number of tickets given in, with the name of every person voted for, and the number of votes for each person, and the town-clerk shall make a fair record thereof at large in the books of the town."

Chapter 29, " Section 2. The town-clerk shall make out a fair and exact copy of the record of all votes given in at any such meeting, for governor, for councillor, and for senator, upon distinct and separate pieces of paper; shall certify upon each copy that the same is a true copy of said record, and shall seal said copies separately, and direct and forward the same to the secretary of state, with a superscription upon each expressing the purport thereof, on or before the first day of April next ensuing."

In any case to which these constitutional provisions are applicable, they are the controlling and the supreme law of the state, and, by the statute first cited, they are made applicable to representatives in congress. The constitution and these statutes are too explicit to leave any doubt in our minds of the general duty of the moderator to count the votes, and make a public declaration of the result of his count, or of the general duty of the town-clerk to make a record of the moderator's declaration of that result. The only construction we are able to give to the words " a fair record of the same " in the constitution, and " a fair record thereof" in the statutes, is, that they mean a record of the " public declaration." The clerk is not an appellate tribunal to overrule the moderator, or to correct an error in the moderator's count and declaration, or to make a record. of the votes, in accordance with a count made by himself, or in accordance with any other evidence than the moderator's count and declaration. The clerk is responsible, not for the accuracy of the moderator's count or declaration, but for his own accuracy in making a correct record of that count and declaration, and in making a correct copy of the record to be sent to the

secretary of state.  The moderator's declaration is to be public, in open town-meeting, in presence of the selectmen, town-clerk, and all others who may take an interest in the election, and be able and willing to detect and expose any error, and obtain a correction of it immediately, when it can be most easily corrected.  And the framers of the constitution and of the statutes referred to evidently relied to a considerable extent upon the publicity of the declaration as a means of obtaining a correct count and a correct record, and did not rely upon the clerk as a tribunal for the silent correction of errors, not publicly corrected by the moderator himself in open town-meeting.

If, on a question of raising money by taxation or appropriating money, put to vote by the moderator, he should declare a vote passed, or a resolution adopted, no one would consider it in the power of the clerk to revise the moderator's declaration, and upon the evidence of his own senses, or his own estimate of the sound of voices or show of hands, or upon other testimony than the moderator's declaration, make a record 'that the vote was not passed or the resolution not adopted.  Such a proceeding would throw the business of the town into confusion, and destroy one of the safeguards of free government; and the law gives the clerk no more power to alter or annul the moderator's count and declaration on electoral than on financial questions.

In various election cases there are various methods of correcting an error of the moderator, not corrected by himself in the count and declaration.  It does not now occur to us that any case could arise in which there would be no remedy for such an error; but one of the questions now is, whether the governor and council are authorized to cause such an error to be corrected in the election of a representative in congress.  The only statutory provision, so far as we are aware, which is supposed to confer any such authority, is section 4 of chapter 33 of the General Statutes, which is as follows:

"If the clerk of any town shall make an incorrect or insufficient record or return of the votes given therein, at any meeting for any officer, the tribunal by whom said votes are opened and corrected may require said clerk, at his own expense, to come in and amend said record or return, according to the facts of the case."

In our judgment it would be highly unreasonable to hold that the legislature, in enacting this section, intended that the governor and council should be authorized to require the town-clerk to make, by amendment, a record which it was his duty not to make in the first instance.  And the weight of this consideration is greatly increased by the terms of the foregoing statute, empowering the governor and council to require the clerk "to come in and amend said record," which authorize it to be done only at the expense of the clerk himself: that the legislature meant to punish the clerk to the extent of leaving his business and paying the cost of a journey to Concord for no fault of his own, but for an error of the moderator in declaring the result of his own count, is a proposition to establish which very singular and very strong reasons would be necessary: that the clerk should be required to come in and correct his own errors at his own expense, is

a rule the legislature might have seen good reason to adopt. For an error in his record of the moderator's declaration of the result of his count, or for an error in making the copy of that record to be sent to the secretary of state, the clerk would be fairly responsible, and in our opinion, the governor and council, upon satisfactory proof of such errors, are authorized to require the clerk " at his own expense to come in," and by amendment make his record and copy what they should have been at first, " according to the facts of the case" which it was his duty to record. Beyond this we do not think the legislature intended the governor and council should go. Beyond this, for errors which ought to be corrected, there is a plain remedy in another proceeding before another tribunal, not only in cases of this kind, but also in cases of all kinds which occur to us. ·

Being confidently of the opinion that, where the record and the return of the clerk are consistent with the moderator's count and declaration, they constitute the only record and return which he had a lawful right to make, we think it would be extraordinary to hold that to be " an incorrect or insufficient record or return," in the sense contemplated in the statute which authorizes the governor and council to require him " at his own expense to come in and amend."

Our conclusions are supported by other reasons, drawn from the history of our legislation on the subject, and a critical examination and comparison of the statutes now in force with former statutes, which clearly manifest a long-continued uniformity of legislative intent, and a settled system of public policy. The act of June 23, 1813, provided that the moderator should declare in open town-meeting the state of the vote, and that the clerk's return should state that " the following votes were given in for —— ——, which votes have been declared in open town-meeting." For a review of other statutes, and particularly of the act of July 5, 1839, and of section 4 of chapter 30 of the Revised Statutes of 1842, we refer the governor and council to the arguments which have been sent to us, copies of which are herewith submitted.

Our conclusions are also supported by numerous decisions in other states, and the entire absence (so far as we have been able to find) of any conflict in the decisions; by the books of forms used in this state; by the forms annually sent by the state government to the town-clerks; and by the uniform practice and universal understanding of the people of the state for a long period of time.

We forbear to go more at length into a detailed statement of the reasons of our opinion, deeming the foregoing, and the statutes and documents referred to, to be, for practical purposes, a sufficient answer to the questions propounded.

                    J. EVERETT SARGENT,
                    WILLIAM L. FOSTER,
                    ELLERY A. HIBBARD,
                    CHARLES DOE,
                    WILLIAM S. LADD,
                    JEREMIAH SMITH.